# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

MARY A. MARTIN, et al.,  Case No. 1:19-cv-142
    Plaintiffs,  Litkovitz, M.J.

vs.

THE BANK OF NEW YORK,  **ORDER**
MELLON CORP., et al.,
    Defendants.

Plaintiffs Mary A. Martin and Donald L. Parks, Jr. bring this diversity action against defendants the Bank of New York Mellon Corporation ("BONYMC"), the Bank of New York Mellon Corporation, as Trustee for the Certificateholders CWALT, Inc. Asset-Backed Certificates Series 2004-16CB ("BONYMT"), Litton Loan Servicing LP, and Reisenfeld & Associates, LPA, LLC alleging state law claims of fraud, conversion, wrongful foreclosure, civil conspiracy, and negligence in relation to the foreclosure of their home. (Doc. 1).[1] This matter is before the Court on defendants BONYMC and BONYMT's motion to dismiss plaintiffs' complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Doc. 17), plaintiffs' response in opposition (Doc. 24), and defendants' reply memorandum (Doc. 26).

**I. Facts**

In 2000, plaintiffs purchased a home located in Harrison, Ohio. (Complaint, Doc. 1 at ¶ 11). In April 2004, plaintiffs refinanced their home with All State Home Mortgage. (*Id.* at ¶ 12). As part of the refinance, plaintiffs executed a promissory note ("the Note") in favor of All State Home Mortgage, which was secured by a mortgage on the home. (*Id.* at ¶ 13). For years, plaintiffs made timely payments on the Note. (*Id.* at ¶ 15). In 2008, plaintiffs were notified that

---

[1] On May 6, 2019, plaintiffs voluntarily dismissed all claims against defendant Reisenfeld & Associates, LLC. (Doc. 14). The docket reflects that plaintiffs have not properly served defendant Litton Loan Servicing, LP.

the Note and Mortgage were purchased by a third-party. (*Id.* at ¶ 16). Plaintiffs exercised due diligence to discover the identity of the entity holding the Note and Mortgage in order to remit payments on the Note to the proper party. Plaintiffs state they were never given complete and accurate information on the issue. (*Id.* at ¶¶ 17-18).

While plaintiffs attempted to resolve this issue, BONYMT, under its former name (The Bank of New York), initiated foreclosure proceedings against plaintiffs, alleging that plaintiffs defaulted on their Note and Mortgage. (*Id.* at ¶ 19). The foreclosure action was commenced on January 23, 2009 in the Hamilton County, Ohio Court of Common Pleas. (*Id.*). Plaintiffs allege that they noticed "some curious elements in the Foreclosure documents submitted to the Court" by BONYMT. (*Id.* at ¶ 21). Specifically, plaintiffs allege that the copy of the Note attached to the foreclosure complaint had two primary defects: (1) it did not demonstrate that BONYMT actually owned or held the Note or Mortgage at the time it filed the foreclosure, and (2) the copy reflected a modification, namely that plaintiff Parks' name was "scratched off" the Note. (*Id.* at ¶¶ 22-23). Plaintiffs further allege that the purported assignment of the mortgage to BONYMT did not appear in the foreclosure record until six months after the foreclosure complaint was filed, and the purported assignment of the mortgage to BONYMT was dated January 22, 2009— only one day prior to the filing of the foreclosure action. (*Id.* at ¶ 24-25).

Plaintiffs allege that in June 2009, All State Home Mortgage, the original owner of the Note and Mortgage, was raided by the FBI as part of a mortgage fraud investigation. (*Id.* at ¶ 28). Plaintiffs allege that on July 23, 2009, about six months after the foreclosure was filed, "an undated, unaffixed allonge to the purported Note appeared on the foreclosure record as an attempt to fix the obviously broken pleadings and chain of title/possession of the Note." (*Id.* at ¶ 29). Plaintiffs allege that BONYMT never actually possessed or held the Note and Mortgage;

was "complicit in creating documents to fix the broken Foreclosure record and chain of title/possession of the Note and Mortgage"; and was prompted by the All State Home Mortgage FBI raid to "fix the record" through their foreclosure action filings. (*Id.* at ¶ 30). Plaintiffs state that they were afforded the opportunity to "inspect" the "purported" original Note in 2010. (*Id.* at ¶ 34). Plaintiffs allege that the Note "appeared to be a facsimile and bore no signs of signature imprint or even wear and tear, despite being 6 years old and having been transferred to numerous parties" and appeared on "letter-sized paper." (*Id.* at ¶ 35). Plaintiffs allege that BONYMT never demonstrated that it owned the Note such that BONYMT had standing to file the foreclosure action. (*Id.* at ¶ 36).

On December 7, 2009, Magistrate Michael Bachman of the Hamilton County Court of Common Pleas granted summary judgment in favor of BONYMT and found that it was entitled to a judgment and decree in foreclosure as a matter of law. (*Id.* at ¶ 37; Doc. 17-2 at 15-17).[2] Plaintiff Martin filed objections to Magistrate Bachman's decision, but these objections were overruled by the presiding judge, Judge Nadel, on July 1, 2010. Plaintiffs, through counsel, filed a notice of appeal on July 29, 2010, but they voluntarily dismissed the appeal two months later. (Doc. 17-3 at 1-2; Doc. 17-5 at 18-19).

In August 2011, plaintiff Martin filed for bankruptcy relief to restructure or resolve the obligation on the Note. (Complaint, Doc. 1 at ¶ 38; Doc. 17-5 at 19). During the bankruptcy proceeding, the foreclosure was stayed. (Complaint, Doc. 1 at ¶ 40). After the completion of the

---

[2] Defendants attach relevant documents from the state court foreclosure proceedings to their motion to dismiss. In ruling on a motion to dismiss, the Court can consider "exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant[s'] motion to dismiss, so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Plaintiffs agree that the "relevant portion of the record of the Foreclosure has been appended to Defendants' Motion to Dismiss." (Doc. 24 at 2). Therefore, the Court will consider these documents in ruling on defendants' motion to dismiss.

bankruptcy proceeding, plaintiffs filed a Rule 60(B) motion to set aside the judgment in the foreclosure action, which was denied by Magistrate Bachman on May 1, 2013. (*Id.* at ¶ 41; Doc. 17-5 at 1). Plaintiffs subsequently filed objections to the Magistrate's decision. On May 5, 2014, Judge Nadel sustained plaintiffs' objections and dismissed the foreclosure. (Doc. 17-5 at 9-13). BONYMT appealed the decision, and the Ohio First District Court of Appeals reversed Judge Nadel's decision, which allowed the foreclosure to go forward. (*Id.* at 14). Plaintiffs appealed to the Supreme Court of Ohio on the ground that BONYMT did not have standing to pursue the foreclosure action in the first place. (Complaint, Doc. 1 at ¶ 50). The Supreme Court of Ohio refused to hear the appeal. (*Id.* at ¶ 55). BONYMT continued to prosecute the foreclosure, enforcing the sale and taking ownership of the home in the spring of 2017. (*Id.* at ¶ 59).

Seeking monetary damages, plaintiffs bring five claims for relief: (1) real estate fraud against defendants BONYMT; (2) conversion against BONYMT; (3) wrongful foreclosure against BONYMT; (4) civil conspiracy against BONYMT and Litton; and (5) negligence against BONYMC.

## II. Motion to Dismiss Standards

Defendants move to dismiss plaintiffs' complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Doc. 17).

In determining a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the plaintiff bears the burden of proving jurisdiction in order to survive a motion to dismiss on grounds of lack of subject matter jurisdiction. *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003); *Michigan Southern R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n., Inc.*, 287 F.3d 568, 573 (6th Cir. 2002); *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266,

269 (6th Cir. 1990). A motion can present a facial or factual challenge to the court's subject matter jurisdiction under Rule 12(b)(1). *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004) (citations omitted). A facial attack on the Court's subject matter jurisdiction alleged in the complaint "merely questions the sufficiency of the pleading." *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). When resolving a facial challenge, the Court accepts the factual allegations of the complaint as true and construes the complaint in a light most favorable to the non-moving party. *United States v. A.D. Roe Co., Inc.*, 186 F.3d 717, 721-22 (6th Cir. 1999). If the motion presents a factual challenge, the Court may consider evidence outside the pleadings to determine if jurisdiction exists. *See Nichols*, 318 F.3d at 677. Further, there is no presumption of truthfulness in favor of the non-moving party. *A.D. Roe Co., Inc.*, 186 F.3d at 722.

Rule 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although the plaintiff need not plead specific facts, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 555, 570). A plaintiff must "plead[] factual content that allows

5

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**III. Resolution**

Defendants move to dismiss plaintiffs' complaint on several grounds. First, defendants argue that all of plaintiffs' claims—real estate fraud, conversion, wrongful foreclosure, civil conspiracy, and negligence—are barred by the doctrine of res judicata. Defendants allege that these claims arise from the state court foreclosure action and challenge the legality of the foreclosure and subsequent sale. (Doc. 17 at 7). Second, defendants argue that plaintiffs fail to state a claim for relief for fraud, conversion, civil conspiracy, and negligence. (*Id.* at 6-13). Defendants further argue that "wrongful foreclosure" is not a recognized cause of action. (*Id.* at 9). Third, defendants argue that the Court lacks subject matter jurisdiction over this case because plaintiffs' claims are barred by the *Rooker-Feldman* doctrine. (*Id.* at 14). The Court will initially address whether it has subject matter jurisdiction over plaintiffs' claims.

    **A. The *Rooker-Feldman* Doctrine**

"The *Rooker-Feldman* doctrine bars lower federal courts from conducting appellate review of final state-court judgments because 28 U.S.C. § 1257 vests sole jurisdiction to review such claims in the Supreme Court." *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 402 (6th Cir. 2020) (quoting *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012) and citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)). The *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus.*

*Corp.*, 544 U.S. 280, 284 (2005). However, where "a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Id.* at 293 (citation omitted).

The Sixth Circuit has clarified that the *Rooker-Feldman* doctrine does not apply when a plaintiff "asserts *independent claims* that . . . state court judgments were procured by certain Defendants through fraud, misrepresentation, or other improper means," rather than claiming "an injury caused by the state court judgments" themselves. *McCormick v. Braverman*, 451 F.3d 382, 392 (6th Cir. 2006) (emphasis in original). Whether *Rooker-Feldman* bars a claim depends on the "source of the injury" alleged in the federal complaint. "If the source of the plaintiff's injury is the state-court judgment itself, then *Rooker-Feldman* applies." *VanderKodde*, 951 F.3d at 402 (citing *McCormick*, 451 F.3d at 393). If the source of the federal plaintiff's injury is the actions of a third party, then the plaintiff asserts an independent claim and *Rooker-Feldman* presents no bar. *Id.* (citations omitted). "A court cannot determine the source of the injury 'without reference to [the plaintiff's] request for relief.'" *Id*. (quoting *Berry*, 688 F.3d at 299 (alteration in original) (in turn quoting *Evans v. Cordray*, 424 F. App'x 537, 539 (6th Cir. 2011)).

Here, the *Rooker-Feldman* doctrine does not bar plaintiffs' complaint, which alleges independent claims of real estate fraud, conversion, wrongful foreclosure, civil conspiracy, and negligence. Plaintiffs' complaint alleges that the source of their injury is defendants' improper conduct giving rise to and occurring throughout the state court foreclosure proceedings, including defendants' fraudulent filings, and not the state court judgment itself. While certain allegations in plaintiffs' complaint appear to dispute the legal conclusion reached by the state

courts, plaintiffs assert independent claims that the state court foreclosure judgment was procured through fraud, misrepresentation, and other improper means. *McCormick*, 451 F.3d at 392.[3] *See also Smith v. ABN AMRO Mortg. Grp., Inc.*, No. 1:06-cv-45, 2007 WL 2029044, at *3 (S.D. Ohio July 10, 2007) (Barrett, J.) (relying on *McCormick* and holding that *Rooker-Feldman* did not bar plaintiffs from asserting independent claims of fraud, misrepresentation, and civil conspiracy even though these claims may have denied a legal conclusion of the state court foreclosure action). In addition, plaintiffs seek monetary damages rather than the reversal of the state court order of foreclosure or a return of their property. *See Miller v. Countrywide Home Loans*, 747 F. Supp. 2d 947, 958 (S.D. Ohio 2010) (noting that *Rooker-Feldman* did not apply because plaintiff did not seek reversal of the state-court foreclosure judgment; rather, he sought money damages and although he alleged some errors and deficiencies in state-court proceedings, his complaint alleged independent federal and state law claims); *Smith*, 2007 WL 2029044, at *3 (noting that plaintiffs did not seek to overturn the foreclosure issued by the state court or request a return of their property). Accordingly, the undersigned finds that *Rooker-Feldman* is not a jurisdictional bar to the present action.

---

[3] In their reply brief, defendants argue that plaintiffs' claims are "predicated on their conviction that the state courts were wrong" and satisfy the "very definition" of cases barred by the *Rooker-Feldman* doctrine. (Doc. 26 at 8). Defendants rely on case law predating the Sixth Circuit's decision in *McCormick*, which held that the *Rooker-Feldman* doctrine does not bar a plaintiff from asserting independent claims that a state court judgment was procured by defendants through "fraud, misrepresentation, or other improper means." *McCormick*, 451 F.3d at 392. Consistent with *McCormick*, the undersigned concludes that plaintiffs' claims are not barred by the *Rooker-Feldman* doctrine.

### B. Claim Preclusion[4]

The doctrine of claim preclusion, or res judicata, provides that a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). Under the doctrine of claim preclusion, a federal court must give a state court judgment the same preclusive effect it would have in the courts of the rendering state. *Dubuc v. Green Oak Tp.*, 312 F.3d 736, 744 (6th Cir. 2002). Under Ohio law, "an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were *or might have been* litigated in the first lawsuit." *National Amusements, Inc. v. City of Springdale*, 558 N.E.2d 1178, 1179 (Ohio 1990) (emphasis in the original) (citation omitted). *See also Grava v. Parkman Twp.*, 653 N.E.2d 226, 228 (Ohio 1995) ("[t]he doctrine of *res judicata* requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it") (citation omitted). *See also State v. Dick*, 738 N.E.2d 456, 460 (Ohio Ct. App. 2000) ("*res judicata* bars a subsequent action based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action, *whether or not that particular claim was litigated*, so long as there has been a valid, final judgment rendered upon the merits") (citing *Grava*, 653 N.E.2d 226, syllabus) (emphasis in the original). Under Ohio law, a prior judgment has preclusive effect if four elements are satisfied: (1) there is a final, valid decision on

---

[4] Plaintiffs allege defendants improperly raised a res judicata defense in their motion to dismiss and argue that res judicate is required to be pleaded as an affirmative defense in an answer. (Doc. 24 at 3-4, citing Ohio law). "Although this might be correct in Ohio state courts, federal courts apply federal procedural rules, which allow parties to raise the defense of res judicata at the 12(b)(6) stage." *Smith v. Lerner, Sampson & Rothfuss, L.P.A.*, 658 F. App'x 268, 275 (6th Cir. 2016) (citing *DeNune v. Consol. Capital of N. Am., Inc.*, 288 F. Supp. 2d 844, 852 (N.D. Ohio 2003); *Stephens v. Hamilton Cty. Jobs & Family Servs.*, 46 F. Supp. 3d 754, 759 (S.D. Ohio 2014); *Rushford v. Firstar Bank, N.A.*, 50 F. App'x 202, 207 (6th Cir. 2002) (affirming district court's dismissal of the plaintiff's claims based on res judicata pursuant to Rule 12(b)(6))).

the merits by a court of competent jurisdiction; (2) the second action involves the same parties or their privies as the first; (3) the second action raises claims that were or could have been litigated in the first action; and (4) the second action arises out of the transaction or occurrence that was the subject matter of the previous action. *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997). Ohio law defines "transaction" as a "common nucleus of operative facts." *Hapgood Id.* at 494 (quoting *Grava*, 653 N.E.2d at 229). All four elements necessary for the application of the *res judicata* doctrine are present in this case.

First, there is a final, valid decision on the merits by the state court in the underlying foreclosure action. The state court issued two decisions in this case – an order granting summary judgment and an order on the Rule 60(B) motion. Both qualify as "final decision[s] on the merits" for purposes of claim preclusion. *See King v. Bank of Am. NA*, No. 3:18-cv-2248, 2019 WL 3292184, at *5 (N.D. Ohio June 19, 2019) (report and recommendation), *adopted*, 2019 WL 3290333 (N.D. Ohio July 22, 2019).

In the foreclosure action, the state court magistrate granted BONYMT's motion for summary judgment and found that BONYMT was entitled to a judgment and Decree in Foreclosure as a matter of law. (Doc. 17-2 at 15-17). Plaintiff Martin filed objections based on BONYMT's failure to produce the original note to demonstrate that the bank actually holds the note. (*Id*. at 21). The presiding judge overruled plaintiff Martin's objections and adopted the magistrate's decision in full. (*Id*. at 22). Plaintiffs Martin and Parks[5] appealed the trial court's decision, arguing that the bank "failed to produce an original or accurate copy of the promissory note on which the claim underlying the foreclosure action was founded. The note provided by The Bank of New York was materially altered to reflect that Park's signature had been removed

---

[5] Throughout the state court foreclosure proceedings, plaintiff Parks argued he was "a party to th[e] real estate," and he later discovered his signature had been "scratched out" on the original note. (Doc. 17-3 at 2, 10).

from said note." (Doc. 17-3 at 1-2). Subsequently, plaintiffs voluntarily dismissed the appeal, and the judgment of the trial court became a final judgment on the merits. *See Hapgood*, 127 F.3d at 493-94 (Ohio court's granting of summary judgment in initial lawsuit rendered a valid, final judgment on the merits of plaintiff's claims) (citing *A–1 Nursing Care of Cleveland, Inc. v. Florence Nightingale Nursing, Inc.*, 647 N.E.2d 222, 224 (Ohio Ct. App. 1994) (stating that the grant of summary judgment terminates a party's action on the merits)).[6]

Some four years later, the trial court granted plaintiffs' Rule 60(B) motion to set aside the judgment and Decree in Foreclosure, finding that BONYMT lacked standing to bring the foreclosure action in the first instance. (Doc. 17-5 at 9-13). BONYMT appealed, and the Ohio Court of Appeals reversed. The Court of Appeals held that because plaintiffs had filed a "Civ. R. 60(B) motion to relitigate the issue of the bank's standing—an issue that they raised at the start of litigation, but which they failed to appeal—the doctrine of res judicata barred their collateral attack against the judgment in foreclosure." (*Id.* at 16).[7] The Ohio Supreme Court declined jurisdiction, and the decision of the Ohio Court of Appeals was "final" for preclusion purposes. *See King*, 2019 WL 3292184, at *5 ("A ruling on a 60(B) motion to vacate is a final judgment on the merits.") (and cases cited therein). The Ohio Court of Appeal's decision reversing the trial court's decision constitutes a final judgment on the merits.

---

[6] As noted by the *Hapgood* court, the pendency of an appeal does not preclude the application of claim preclusion because a prior state court judgment remains "final" for preclusion purposes unless or until overturned by an appellate court. *Id.* at 494 n.3 (citing *Cully v. Lutheran Med. Ctr.*, 523 N.E.2d 531, 532 (Ohio Ct. App. 1987) (collecting cases)). In any event, plaintiffs dismissed their appeal and the state trial court's summary judgment order constitutes a final judgment on the merits.

[7] Relying on the Ohio Supreme Court's decision in *Bank of America v. Kuchta*, 21 N.E.3d 1040 (Ohio 2014), the First District Court of Appeals explained that a party's lack of standing can be challenged in the course of the foreclosure proceedings themselves or on direct appeal of the judgment; however, res judicata bars a party from asserting lack of standing in a collateral attack on a final judgment in foreclosure such as through a Rule 60 motion for relief from judgment. (Doc. 17-5 at 24).

Therefore, the first element of claim preclusion is satisfied as both the order granting summary judgment and the appeal decision on the Rule 60(B) motion qualify as final decisions on the merits of plaintiffs' claims challenging BONYMT's ownership of the Note and ability to initiate state court foreclosure proceedings.

Plaintiffs argue there is no final decision on the merits because any such decision was procured by fraud on the part of BONYMT. Plaintiffs argue that claim preclusion requires that the final decision be obtained "without fraud or collusion." (Doc. 24 at 7, 10-12) (quoting *Davis v. Sun Oil Co.*, 148 F.3d 606 (6th Cir. 1998) ("In Ohio, '[t]he doctrine of res judicata is that an existing final judgment rendered upon the merits, *without fraud or collusion*, by a court of competent jurisdiction, is conclusive of rights. . . . ) (emphasis added by plaintiffs).

"Fraud by a party does not undermine the conclusiveness of a judgment unless the fraud was extrinsic, that is, it deprived the opposing party of the opportunity to appear and present his or her case." 63 Ohio Jur. 3d Judgments § 391. As the Ohio Supreme Court has explained, the type of fraud justifying relief from a judgment "refers to deceit or other unconscionable conduct committed by a party to obtain a judgment *and does not refer to conduct that would have been a defense to or claim in the case itself*." *Kuchta*, 21 N.E.3d at 1044 (emphasis added) (citing numerous cases). In *Kuchta*, the plaintiffs alleged that the bank had committed fraud by falsely claiming to be the owner of the note and mortgage when it filed the foreclosure action against the plaintiffs. The Ohio Supreme Court rejected the plaintiffs' contention that the bank's lack of standing at the time of filing its foreclosure action amounted to fraud justifying relief from judgment. The Supreme Court found that "[t]he bank's alleged lack of standing did not prevent the Kuchtas from appearing and presenting a full defense, including lack of standing." *Id*. at 1045.

Here, similarly, the "fraud" alleged by plaintiffs – BONYMT's lack of standing to bring the state court foreclosure action – is not the type of extrinsic "fraud" that bars the application of res judicata. Plaintiffs had the opportunity to raise the fraud/standing issue in the state court, and they admit that "the fraud claims were asserted by plaintiffs in the Foreclosure." (Doc. 24 at 8). As plaintiffs were not prohibited from appearing and raising the issue of fraud/standing in the foreclosure proceeding, the alleged "fraud" plaintiffs now allege does not undermine the conclusiveness of the state court's judgment and does not bar the application of res judicata in this case.

Second, this federal action involves the same parties or their privies as the first state foreclosure case.[8] The parties in the instant lawsuit were parties to the prior foreclosure action in state court.

Third, plaintiffs' federal court action raises claims that were or could have been litigated in the state court foreclosure action. Plaintiffs specifically raised BONYMT's lack of ownership of the Note as a defense in the state foreclosure proceeding. (*See* Doc. 17-2 at 21, Plaintiffs' December 2009 Objections to Magistrate Bachman's foreclosure judgment—"The Bank of New York cannot foreclose unless they produce the original note and the accounting for the obligation. . . . I have a right to know that the foreclosing bank is the bank that holds the note."). And, as noted above, plaintiffs do not dispute "the fraud claims were asserted" in the foreclosure action. (Doc. 24 at 8).

Fourth, the instant action arises out of the transaction or occurrence that was the subject matter of the state court foreclosure action. *Hapgood*, 127 F.3d at 493. Plaintiffs argue that their

---

[8] Plaintiffs do not take issue with two of the res judicata elements in this case: that the instant action involves the same two parties or their privies, and the second action asserts claims that were or could have been litigated in the first action. (Doc. 24 at 7).

13

claims in this federal action deal with "a number of transactions, including the fabrication/ concealment of the Note, the representation in pleadings filed with the Foreclosure trial court, and lastly Defendants' credit-bid purchase of Plaintiffs' home at the sheriff sale and taking of the title to the home under false pretenses." (Doc. 24 at 7). However, each of plaintiffs' claims in this case arise out of the same Note and Mortgage that were enforced against plaintiffs in the foreclosure action. Plaintiffs assert BONYMT committed fraud, conversion, wrongful foreclosure, and civil conspiracy by misrepresenting it had an interest in the Note when it did not and filing a foreclosure action when it had no standing to do so. Plaintiffs allege that BONYMC was negligent "by allowing the Foreclosure to commence/proceed despite the fact that BoNY Trustee had and has no authority to so foreclose on the Home." (Doc. 1 at ¶ 98). The same operative facts govern the claims in both the federal and state court proceedings: the facts alleged in plaintiffs' federal complaint in support of their claims of real estate fraud, conversion, wrongful foreclosure, civil conspiracy, and negligence—i.e., that BONYMT did not own or possess the Note at the time it initiated the foreclosure, as well as certain irregularities with the Note—are the same facts underlying plaintiffs' defenses in the state court foreclosure action. The claims in this federal lawsuit arise from a common nucleus of operative facts as those in the state court action and satisfy the fourth element of claim preclusion.

Accordingly, claim preclusion bars plaintiffs from relitigating the claims from their state court foreclosure lawsuit in this federal action. Defendants' motion to dismiss on the basis of res judicata is **GRANTED**.

## IV. Conclusion

Based on the foregoing, it is **ORDERED** that:

1. Defendants' motion to dismiss (Doc. 17) is **GRANTED**.

2. To the extent plaintiffs seek to perfect service of process on defendant Litton Loan Servicing LP, such a request is **DENIED** as futile because plaintiffs are barred from relitigating their claims related to the state law foreclosure lawsuit in this Court.
3. This case is **CLOSED** on the docket of this Court.

Date: 3/31/20  *s/Karen L. Litkovitz*
Karen L. Litkovitz
United States Magistrate Judge